Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE FAJARDO
PANEL X

| | | |
|---|---|---|
| YARILYN RÍOS FIGUEROA<br><br>Recurrida<br><br>V.<br><br>IRMA LÓPEZ MAISONET<br><br>Peticionaria | KLCE202301338 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Caso Núm.:<br>FA2022RF00258<br><br>Sobre:<br>Alimentos entre Parientes |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2023.

El 29 de noviembre de 2023, compareció ante este Tribunal de Apelaciones, la señora Irma López Maisonet (en adelante, señora López Maisonet o peticionaria), mediante recurso de *certiorari*. En virtud de este, nos solicita que revisemos la *Orden* del Tribunal de Primera Instancia, Sala Superior de Fajardo, emitida el 6 de noviembre de 2023, notificada al día siguiente. Mediante el aludido dictamen, el tribunal *a quo* declaró No Ha Lugar la *Moción de Desestimación por no existir Derecho a la Concesión de Remedio* presentada por la peticionaria, el 6 de octubre de 2023.

Adelantamos que, por los fundamentos que expondremos a continuación, se expide el auto de *certiorari*, se *revoca* el dictamen recurrido y se desestima la demanda.

**I**

El 7 de diciembre de 2022, la señora Yarilyn Ríos Figueroa (en adelante, señora Ríos Figueroa o recurrida), presentó *Petición* de alimentos contra la peticionaria, a favor de su hijo, el menor JJVR.

Número Identificador

SEN2023 _____

Surge de la petición que, la señora López Maisonet es la abuela paterna del menor JJVR.

Tras múltiples incidencias procesales, innecesarias pormenorizar para atender el asunto que nos ocupa, el 25 de abril de 2023, la peticionaria presentó *Contestación a Demanda*[1]. Por medio de esta, admitió ser la abuela paterna del menor JJVR. Manifestó que, laboraba como empleada del sistema de educación, y que devengaba menos dinero que la recurrida. Asimismo, sostuvo que padecía de varias condiciones de salud que le ocupaban gran parte de su salario, por lo que no tenía capacidad económica para proveer una pensión. En adición, alegó que, no veía al menor JJVR desde que el mismo tenía tres (3) meses de edad. Como defensas afirmativas, indicó que la demanda dejaba de exponer la concesión de un remedio, y levantó, falta de parte indispensable e incapacidad económica.

Tras llevar a cabo el descubrimiento de prueba, la señora Ríos Figueroa presentó *Moción en Solicitud de Vista*, el 31 de agosto de 2023, requiriendo un señalamiento para celebrar la vista en su fondo. El 1ro de septiembre de 2023, el foro de instancia intimó *Orden*, señalando la vista para el 10 de octubre de 2023, a las 10:30am, por medio de videoconferencia.

Previo a la celebración de la vista, el 19 de septiembre de 2023, la señora López Maisonet presentó *Moción sobre Estipulaciones*. A través de esta, y "en aras de que las situaciones, controversias y tiempo en la vista"[2] fuesen menor, realizó las siguientes estipulaciones:

1.  El joven Jerry John Vázquez López es el padre biológico del menor [JJVR].

2.  La demandante procreó el menor JJVR sin haber estado casados.

---

[1] Apéndice del recurso de *certiorari*, págs. 18-19.
[2] *Íd.*, pág. 21.

3. El menor nació el 25 de noviembre de 2009.

4. El padre Jerry J Vázquez López (finado) falleció el 9 de abril de 2010.

5. La Sra. Ríos Figueroa y el finado nunca se casaron.

6. El finado es hijo de la señora López Maisonet (demandada).

7. La Sra. Irma López Maisonet nació el 23 de septiembre de 1961.

8. El Sr. Orlando Ríos Cintrón es el padre de la demandante que falleció el 29 de septiembre de 2021.

9. La madre de la demandante se llama Norma Figueroa Colón.

10. El menor cursa el octavo grado.

11. El menor estudia en la Escuela Irma Pedraza Ruiz en Ceiba, Puerto Rico[.][3]

El 2 de octubre de 2023, el Tribunal se dio por enterado.[4] Varios días luego, el 6 de octubre de 2023, la peticionaria incoó *Moción de Desestimación por no Existir Derecho a la Concesión de Remedio*. A través de esta, argumentó que, la obligación legal de los abuelos, de alimentar a sus nietos, era de naturaleza subsidiaria. En particular, indicó que, dicha obligación podía surgir cuando los progenitores no pudiesen suplir las necesidades alimentarias en su totalidad o, cuando sólo pudiesen cubrirlas parcialmente. A esos efectos, arguyó que, toda vez que el padre del menor JJVR había fallecido cuando este tenía tres (3) meses de nacido, la obligación de prestar alimentos se había extinguido, y no podía subsistir su obligación supletoria.

El 10 de octubre de 2023, las partes comparecieron a la vista pautada. No obstante, la señora Ríos Figueroa requirió de un

---

[3] *Íd.*, págs. 21-22. Cabe destacar que, del expediente no surge que las estipulaciones hayan sido objetadas por la señora Ríos Figueroa.

[4] Véase, entrada número 67 del expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Hacemos constar que, además de darse por enterado, el tribunal *a quo* refirió el asunto a EPA (Examinador de Pensiones Alimentarias). Sin embargo, tras una solicitud de reconsideración, presentada por la peticionaria, el foro primario dejó sin efecto el referido.

término de veinte (20) días para contestar la solicitud de desestimación, y el Tribunal lo concedió[5]. Consecuentemente, dejó el caso sin señalamiento, y dispuso que, se haría lo procedente en derecho, una vez recibida la réplica a la solicitud de desestimación.[6]

El 31 de octubre de 2023, la recurrida presentó *Réplica a Moción de Desestimación*. Por un lado, argumentó que, la solicitud de desestimación debió haberse presentado previo a la contestación a la demanda. Explicó que, la recurrida contestó la demanda el 25 de abril de 2023, por lo que no procedía la desestimación. Por otro lado, esgrimió que, la responsabilidad de brindar alimentos era de ambos progenitores y, puesto que uno de ellos no estaba, debía activarse la obligación subsidiaria de la abuela, a saber, la señora López Maisonet. Cabe destacar que, de manera contradictoria, la recurrida también argumentó en su réplica que, la responsabilidad era subsidiaria siempre y cuando estuviesen presentes ambos progenitores.[7]

Así las cosas, el 6 de noviembre de 2023, notificada al día siguiente, la primera instancia judicial emitió *Orden*, disponiendo lo siguiente:

> Examinada tanto la Moci[ó]n de Desestimaci[ó]n como su correspondiente oposici[ó]n, el Tribunal declara No Ha Lugar la primera. En este caso, la parte demandada constest[ó] la demanda desde el 25 de abril de 2023 y el descubrimiento de prueba se encuentra en proceso.
>
> Se señala vista en su fondo para el 30 de noviembre de 2023 a las 2:00p.m.[8]

Inconforme con la determinación, el 29 de noviembre de 2023, la señora López Maisonet acudió ante este foro revisor mediante *Certiorari*, y realizó los siguientes señalamientos de error:

---

[5] El Tribunal intimó *Orden* en la misma fecha, haciendo constar el término concedido a la recurrida, para que replicara a la solicitud de desestimación.
[6] Véase, entrada número 76 del expediente electrónico en SUMAC, a saber, la *Minuta* de la vista, notificada el 11 de octubre de 2023.
[7] Apéndice del recurso de *certiorari*, págs. 29-32.
[8] *Íd.*, pág. 33.

> Primer error: Erró el TPI al no desestimar bajo la Regla 10.2 la demanda de epígrafe por no haber razón que justifique la concesión de un derecho.
>
> Segundo error: Erró el TPI al no declarar que habi[é]ndose extinguido por fallecimiento la obligación principal del padre de alimentar no corresponde imponer alimentos entre parientes a una abuela.

Junto a su recurso, la peticionaria presentó *Moción de Orden Provisional de Auxilio de Jurisdicción*. Por medio de esta, nos solicitó la paralización de los procedimientos pendientes ante el tribunal de instancia. Evaluada la misma, emitimos *Resolución* el 30 de noviembre de 2023, declarándola No Ha Lugar. Ello, toda vez que, la moción en auxilio de jurisdicción no cumplía con las exigencias procesales que impone la Regla 79 (E) del Reglamento de esta Curia.[9]

El mismo 30 de noviembre de 2023, la peticionaria incoó *Moción Urgente de Reconsideración a No Auxilio sic por Haber Cumplido y Sometiendo Prueba de ello*, la cual declaramos No Ha Lugar.

Posteriormente, el 5 de diciembre de 2023, mediante *Resolución*, concedimos a la parte recurrida hasta el lunes, 11 de diciembre de 2023, para que expusiera su posición, advirtiéndole, además, de que, transcurrido dicho término, el recurso se tendría por perfeccionado para su adjudicación final.

El 11 de diciembre de 2023, compareció la señora Ríos Figueroa mediante *Moción en Solicitud de Prórroga*, requiriendo de un término adicional de diez (10) días. *Mediante Resolución* emitida, el 12 de diciembre de 2023, concedimos a la recurrida hasta el viernes, 15 de diciembre de 2023, a las 10:00am, para exponer su posición.

---

[9] La regla 79(E) de nuestro Reglamento, requiere que, todo escrito en auxilio de jurisdicción se notifique a la otra parte de manera simultánea a la presentación del recurso de *certiorari*. Además, dispone que, se entenderá realizada la notificación simultánea, cuando la misma se lleve a cabo (1) personalmente, (2) por teléfono o, (3) por correo electrónico, de forma que, las partes advengan en conocimiento de la solicitud de orden y el recurso, inmediatamente a su presentación.

En cumplimiento con lo ordenado, el 15 de diciembre de 2023, la señora Ríos Figueroa presentó *Oposición al Recurso de Apelación*.

Perfeccionado el recurso, y con el beneficio de la comparecencia de las partes, resolvemos.

**II**

### *A. El Certiorari*

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior.[10] Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones[11], dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas".[12] La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del

---

[10] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

[11] 4 LPRA Ap. XXII-B, R. 40.

[12] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra.

pleito y una dilación indeseable en la solución final del litigio.

(G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[13]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva".[14] Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio".[15]

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil[16], dispone, en su parte pertinente, lo siguiente:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la **denegatoria de una moción de carácter dispositivo**. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciaros, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis Nuestro).

[. . .]

---

[13] 4 LPRA Ap. XXII-B, R. 40.
[14] *García v. Padró*, 165 DPR 324, 327 (2005).
[15] *Torres Martínez v. Torres Ghigliotty*, supra.
[16] 32 LPRA, Ap. V, R.52.1.

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El *certiorari*, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso.[17] Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario.[18] Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[19]

### B. Moción de Desestimación

En nuestro ordenamiento jurídico, la Regla 10.2 de Procedimiento Civil[20], permite que el demandado solicite la desestimación de la reclamación instada en su contra cuando, de las alegaciones de la demanda, advierte que alguna de las defensas afirmativas prosperará.[21] La norma dispositiva contempla que una parte pueda solicitar la desestimación de la acción en su contra a base de varios supuestos. La citada Regla dispone lo siguiente:

---

[17] *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948).
[18] *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960).
[19] *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).
[20] 32 LPRA Ap. V, R. 10.2.
[21] *Trans-Oceanic Life, Ins. v. Oracle Corp.,* 184 DPR 689, 701 (2012); *Sánchez v. Aut. de los Puertos,* 153 DPR 559, 569 (2001).

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, **las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada**:
>
> 1)   Falta de jurisdicción sobre la materia.
>
> 2)   Falta de jurisdicción sobre la persona.
>
> 3)   Insuficiencia del emplazamiento.
>
> 4)   Insuficiencia del diligenciamiento del emplazamiento.
>
> **5)   Dejar de exponer una reclamación que justifique la concesión de un remedio.**
>
> 6)   Dejar de acumular una parte indispensable.
> (Énfasis nuestro).[22]

Como se observa, la referida regla permite que un demandado o reconvenido solicite al tribunal la desestimación de la demanda en su contra por el fundamento de que la acción no expone una reclamación que justifique la concesión de un remedio.[23] Ante una solicitud basada en dicha modalidad, nuestro Máximo Foro ha expresado que, los tribunales tienen que dar por ciertas las alegaciones contenidas en la demanda y, considerarlas de la manera más favorable para la parte demandante.[24]

Del mismo modo, nuestro Tribunal Supremo reiteró en *Consejo Titulares v. Gómez Estremera et al.*, que, para que pueda prevalecer una moción bajo esta modalidad, es necesario que el demandado demuestre que el demandante no tiene derecho a remedio alguno, a base de las alegaciones formuladas en la demanda.[25] Ahora bien, esto solo aplica a los hechos bien alegados y expresados de manera concluyente y que de su faz no den margen

---

[22] 32 LPRA Ap. V, R. 10.2.
[23] *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013); *Torres Torres v. Torres et al.*, 179 DPR 481, 501 (2010).
[24] *López García v. López García*, 200 DPR 50, 69 (2018); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *El Día, Inc. v. Mun. de Guaynabo*, supra; *Colón v. Lotería*, 167 DPR 625, 649 (2006); *García v. ELA*, 163 DPR 800, 814 (2005).
[25] 184 DPR 407, 423 (2012); Véase también, *El Día, Inc. v. Mun. de Guaynabo*, supra; *Pressure Vessels P.R. v. Empire Gas, P.R.,* 137 DPR 497, 505 (1994).

a duda alguna.[26] En consecuencia, la demanda no deberá ser desestimada, a menos que se desprenda con razonable certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación.[27]

## C. Obligación alimentaria

En nuestro ordenamiento jurídico, los casos sobre alimentos de menores están revestidos del más alto interés público. El Tribunal Supremo de Puerto Rico ha manifestado que la obligación alimentaria tiene su fundamento en el derecho constitucional a la vida y en la solidaridad familiar. Por tanto, nuestro más Alto Foro ha resuelto que, en nuestra jurisdicción, los menores tienen un derecho fundamental a recibir alimentos.[28] Más aún, el máximo foro ha reconocido que el derecho a reclamar alimentos constituye parte del derecho a la vida, protegido por la Constitución de Puerto Rico.[29]

En consonancia con lo anterior, el Artículo 590 del Código Civil de Puerto Rico[30], establece que los progenitores tienen, sobre el menor sujeto a su patria potestad, el deber de alimentarlo y proveerle lo necesario para su desarrollo y formación integral. El Código Civil define alimentos como "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia".[31] Cuando el alimentista es menor de edad, el referido artículo expresa además que, "los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos

---

[26] *Colón v. Lotería*, supra; *Pressure Vessels P.R. v. Empire Gas, P.R.*, supra.

[27] *El Día, Inc. v. Mun. de Guaynabo*, supra; *Consejo de Titulares v. Gómez Estremera et al.*, supra; *Pressure Vessels P.R. v. Empire Gas, P.R.*, supra.

[28] *Díaz Rodríguez v. García Neris*, 208 DPR 706, 716 (2022); *Umpierre Matos v. Juelle, Mejías*, 203 DPR 254, 265 (2019); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011).

[29] Const. PR art. II, § 7; *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 738 (2009); *Umpierre Matos v. Juelle, Mejías*, supra, pág. 266.

[30] 31 LPRA § 7242. Antes, artículo 153 del Código Civil de 1930, 31 LPRA § 601.

[31] 31 LPRA § 7531. Antes, artículo 142 del Código Civil de 1930, 31 LPRA § 561.

extraordinarios para la atención de sus condiciones personales especiales".[32] Es por lo que, la pensión se reducirá o aumentará en proporción a los recursos del primero y a las necesidades del segundo. De acuerdo con este principio de proporcionalidad, se tomarán en consideración los recursos del alimentante y la posición social de la familia, así como el estilo de vida que lleva el alimentante.[33]

Por otro lado, nuestro ordenamiento jurídico dispone que, "el derecho a recibir alimentos es personalísimo, imprescriptible, continuo e indivisible. No puede ser objeto de transacción, renuncia, gravamen o embargo. Tampoco puede compensarse la cantidad adeudada por dicho concepto con la que el alimentista deba al alimentante".[34] Asimismo, nuestra más Alta Curia ha expresado que, la obligación de proveer alimentos es personal de cada uno de los progenitores, consecuentemente, debe ser satisfecha del propio peculio y de manera proporcional a sus recursos y a la necesidad del menor.[35]

Ahora bien, a modo de excepción, nuestro ordenamiento jurídico impone a los abuelos la obligación de proveer alimentos a sus nietos.[36] Dicha obligación es de naturaleza subsidiaria. Es decir, surge en instancias en las que los progenitores no pueden proveer los alimentos a sus hijos, "ya sea porque están física o mentalmente incapacitados para hacerlo o[,] porque no cuentan con suficientes recursos económicos."[37] La obligación de los abuelos surge, además, tanto cuando los progenitores no puedan suplir en

---

[32] 31 LPRA § 7531.
[33] *Fonseca Zayas v. Rodríguez Meléndez*, supra, pág. 634.
[34] 31 LPRA § 7535.
[35] *Díaz Rodríguez v. García Neris*, supra.
[36] Véase, artículos 658, 660 y 662 del Código Civil de 2020, 31 LPRA §§ 7541, 7543 y 7545 respectivamente. Estos artículos recogen las disposiciones de los artículos 143 y 144 del Código Civil de 1930, 31 LPRA §§ 562 y 563.
[37] *Martínez de Andino v. Martínez de Andino*, 184 DPR 379, 385 (2012), citando a *Piñero Crespo v. Gordillo Gil*, 122 DPR 246, 252-253 (1941).

su totalidad las necesidades alimentarias de sus hijos, así como cuando sólo puedan cubrirlas de manera parcial.[38]

No obstante todo lo anterior, la obligación de dar alimentos **se extingue** por, entre otras causas, la **muerte** del alimentista o del **alimentante**.[39]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En el caso que nos ocupa, la peticionaria nos plantea, en esencia, que el foro primario erró al no desestimar el caso de epígrafe, a tenor con lo dispuesto en la Regla 10.2(5) de las de Procedimiento Civil, *supra*. Arguye que, el tribunal *a quo* abusó de su discreción al no desestimar la demanda, toda vez que no existe derecho a lo reclamado.

Tras evaluar detenidamente el recurso presentado por la señora López Maisonet, colegimos que, le asiste la razón. Veamos.

Conforme reseñáramos, el 7 de diciembre de 2022, la señora Ríos Figueroa presentó una *Petición* sobre alimentos entre parientes, solicitando pensión alimentaria a favor de su hijo, el menor JJVR. La *Petición*, fue presentada contra la señora López Maisonet, abuela paterna del referido menor. Tras múltiples trámites procesales, el 6 de octubre de 2023, la peticionaria incoó una solicitud de desestimación. A grandes rasgos, manifestó que, la obligación de prestar alimentos al menor JJVR se había extinguido, toda vez que su padre había fallecido cuando este tenía tres (3) meses. Añadió que, como consecuencia de ello, y puesto que la obligación alimentaria de los abuelos es de naturaleza subsidiaria, no podía subsistir su obligación.

---

[38] *Martínez de Andino v. Martínez de Andino*, supra, págs. 385-386; S. Torres Peralta, *La Ley de Sustento de Menores y el derecho alimentario en Puerto Rico*, San Juan, Pubs. STP, 2006–2007, T. 1, pág. 5.60.
[39] 31 LPRA § 7581. Antes, artículo 150 del Código Civil de 1930, 31 LPRA § 569.

Luego, específicamente el 31 de octubre de 2023, la recurrida replicó, argumentando en primer lugar que, la moción dispositiva debió haberse presentado previo a la contestación a la demanda. En segundo lugar, adujo que, la responsabilidad de brindar alimentos era de ambos progenitores y, puesto que uno de ellos no estaba, debía activarse la obligación subsidiaria de la peticionaria. Tras examinar ambos escritos, el tribunal de instancia declaró No Ha Lugar la moción dispositiva.[40]

Conforme al derecho expuesto, la obligación de proveer alimentos es personal de cada uno de los progenitores.[41] No obstante, en instancias en las que los progenitores no puedan proveer los alimentos a sus hijos, ya sea por impedimento físico o mental, o por insuficiencia económica, la obligación de proveer alimentos se impone a los abuelos del menor.[42] Ahora bien, la obligación de los abuelos es de naturaleza subsidiaria, es decir, complementaria. De modo que, para que se pueda implementar la obligación legal de los abuelos, debe existir la obligación del padre o la madre del menor.

En adición a lo anterior, expusimos también que, la obligación del alimentante deja de existir por, entre otras razones, la muerte del mismo.[43] Así pues, en instancias en las que la madre o el padre del menor haya fallecido, la obligación de dicho progenitor queda extinta, y no procede la obligación supletoria de los abuelos.

En el presente caso, quedó estipulado que, el padre del menor JJVR, el señor Jerry John Vázquez López (en adelante, señor Vázquez López), falleció el 9 de abril de 2010.[44] Tras su muerte, su

---

[40] Apéndice del recurso de *certiorari*, pág. 33.
[41] *Díaz Rodríguez v. García Neris*, supra.
[42] *Martínez de Andino v. Martínez de Andino*, supra, pág. 385, citando a *Piñero Crespo v. Gordillo Gil*, supra; Artículos 658, 660 y 662 del Código Civil de 2020, 31 LPRA §§ 7541, 7543 y 7545 respectivamente. Antes, artículos 143 y 144 del Código Civil de 1930, 31 LPRA §§ 562 y 563.
[43] 31 LPRA § 7581. Antes, artículo 150 del Código Civil de 1930, 31 LPRA § 569.
[44] Apéndice del recurso de *certiorari*, págs. 20 y 21-22.

obligación alimentaria para con el menor JJVR dejó de existir. Como consecuencia de ello, y toda vez que, insistimos, la obligación de dar alimentos de los abuelos es complementaria, **no procede la imposición de tal obligación a la abuela del menor JJVR**, **a saber**, **la señora López Maisonet**.

Por último, es menester señalar lo siguiente, con respecto a la presentación de la moción de desestimación. En su *Oposición al recurso de Certiorari*, la recurrida expone que, la referida solicitud no procede puesto que, se presentó luego de la contestación a la demanda. Si bien es cierto que la peticionaria formuló su moción dispositiva luego de replicar la demanda, surge de manifiesto de las Reglas 10.7 y 10.8(b) de las de Procedimiento Civil[45], que la defensa de haber dejado de exponer una reclamación que justifique la concesión de un remedio, es irrenunciable. Así pues, la moción dispositiva fue presentada oportunamente.

De conformidad a todo lo anterior y, toda vez que, la demanda no expone una reclamación que justifique la concesión de un remedio, procede la desestimación de la misma.

**IV**

Por los fundamentos expuestos, se expide el auto de *certiorari,* se *revoca* el dictamen recurrido y se desestima la demanda.

Notifíquese.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.  La Juez Barresi Ramos emite Voto Disiente por escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[45] 32 LPRA Ap. V, R. 10.7 y R. 10.8(b).

| | | |
|---|---|---|
| YARILYN RÍOS FIGUEROA<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>V.<br><br>IRMA LÓPEZ MAISONET<br>DEMANDADA(S)-PETICIONARIA(S) | KLCE202301338 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de FAJARDO<br><br>Caso Núm. FA2022RF00258 (203)<br><br>Sobre: Alimentos entre Parientes |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón.

**VOTO DISIDENTE DE LA JUEZ BARRESI RAMOS**

En San Juan, Puerto Rico, hoy día 19 de diciembre de 2023.

Por entender que no procede denegar el recurso ante nuestra consideración, respetuosamente disentimos de la opinión mayoritaria por las razones que exponemos a continuación.

**-I-**

Los principios del derecho de alimentos en Puerto Rico, y en particular, de los hijos menores no emancipados a recibir alimentos de sus progenitores, están firmemente establecidos. El contenido legal del derecho a recibir alimentos, y de la correlativa obligación de proveerlos, emana del principio fundamental del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico.[1] Su fundamento ético descansa en el derecho natural, en los lazos indisolubles de amor, solidaridad humana y de profunda responsabilidad de las personas por los hijos que traen al mundo, valores de la más alta jerarquía para toda sociedad civilizada.[2]

---

[1] Const. PR Art. II, § 7.

[2] Sarah Torres Peralta, La Ley de Sustento de Menores y el Derecho Alimentario de Puerto Rico, San Juan, Publicaciones STP, Inc., Edición 2006, Tomo I, pág. 1.11; Argüello López v. Argüello García, 155 DPR 62, 70 (2001).

Con ello en mente, es menester resaltar que, en nuestra jurisdicción, los casos de derecho a alimentos de menores están revestidos del más alto interés público, siendo el interés principal el bienestar del menor o el interés óptimo del menor.[3] Ante ello, se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia.[4]

La obligación de alimentar al menor es inherente a la maternidad y la paternidad por lo que, recae sobre los obligados desde el momento en que la relación filial queda establecida legalmente, independientemente de las fuentes de las cuales emana la obligación de alimentar.[5] Esta obligación es personal de cada uno de los progenitores por lo que debe ser satisfecha del propio peculio y de forma proporcional a sus recursos y a la necesidad del menor.[6]

Asimismo, el derecho a recibir alimentos es personalísimo, imprescriptible, continuo e indivisible.[7] Esto quiere decir que, no puede ser objeto de transacción, renuncia, gravamen o embargo. Tal naturaleza es personalísima porque pertenece a una persona en particular y depende exclusivamente de las circunstancias económicas particulares del que los brinda y del que los recibe.[8] En esa misma dirección, cabe resaltar que dicha obligación alimentaria no es transmisible, ni por muerte a los sucesores, ni por razón alguna a terceras personas.[9] El Artículo 660 del Código Civil de Puerto Rico de 2020, instituye la prelación entre alimentantes llamados a prestarse alimentos: (a) el cónyuge; (b) los descendientes

---

[3] *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 559 (2012); *Toro Sotomayor v. Colón Cruz*, 176 DPR 528 (2009). (énfasis nuestro).
[4] Artículo 653 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7531.
[5] *Díaz Rodríguez v. García Neris*, supra, pág. 12; *Santiago, Maisonet v. Maisonet Correa*, supra, págs. 560-561.
[6] *Díaz Rodríguez v. García Neris*, supra, pág. 12; *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019).
[7] Artículo 657 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 7535. Véase, además *Consejo de Titulares v. CRUV*, 132 DPR 707, 721 – 722 (1993).
[8] Id., 31 LPRA sec. 7535.
[9] Id.

del grado más próximo; (c) los ascendientes del grado más próximo; y (d) los hermanos.[10]

Ahora bien, ciertamente la obligación de alimentar a los hijos recae en primer orden a los progenitores como resultado de la relación filial. No obstante, aunque el derecho a recibir alimentos es uno de naturaleza personal, ello no quiere decir que se extinga con la muerte del alimentante. Es decir, la responsabilidad de un progenitor se extingue con su muerte, mas no el derecho de su hijo menor a recibir alimentos hasta advenir la mayoría de edad.[11] Nuestro ordenamiento jurídico dispone que existe una obligación subsidiaria para garantizar el interés óptimo de los menores.[12] Cuando el progenitor del menor alimentista no cuenta con los medios para suministrarle alimentos o cuando no esté capacitado física o mentalmente para proporcionárselos, es necesario acreditar que los llamados preferentemente a esa prestación carecen de medios para sufragarlos.[13] Después de todo, lo que se persigue es garantizar el mejor interés óptimo de los menores. Por ende, ante el fallecimiento del señor Jerry John Vázquez López, este queda relevado (extinción) de cualquier obligación de alimentos más procede el reclamo de la obligación subsidiaria.

En consideración al poder de *parens patriae* y el derecho a alimentos de todo menor, el tribunal de instancia tiene la obligación de examinar las circunstancias del caso para determinar si procede o no la imposición de la pensión alimentaria, ello en conformidad con la ley y la jurisprudencia interpretativa. Ante la existencia de un derecho a alimentos, no procede la desestimación de la petición por existir una reclamación que justifica la concesión de un remedio.

Eileen J. Barresi Ramos
Juez de Apelaciones

---

[10] Artículo 660 del Código Civil de Puerto Rico de 2020 31 LPRA § 7543.
[11] Artículo 662 del Código Civil de Puerto Rico de 2020 31 LPRA § 7545.
[12] *Vega v. Vega Oliver*, 85 DPR 675 (1962).
[13] Artículo 662 del Código Civil de Puerto Rico de 2020 31 LPRA § 7545.