CARMEN NOELIA PIÑERO CRESPO, demandante y peticionaria, *v.* SERGIO GORDILLO GIL Y OTROS, demandados y recurridos.

*Número:* CE-86-426 *Resuelto:* 30 de junio de 1988

*Maritza González Ortiz*, abogada de la peticionaria; *José A. Fernández Paoli*, de *Martínez Álvarez, Fernández Paoli, Menéndez Monroig, Menéndez Cortada & Lefranc Romero*, abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

Disponemos sobre la naturaleza y el alcance de la responsabilidad de los abuelos de alimentar a sus nietos, si ésta constituye cosa juzgada, sobre el procedimiento legal que debe seguirse para reclamar dicha responsabilidad y, en particular, si dentro de un procedimiento de desacato contra el padre por incumplimiento con su obligación alimentaria se puede exigir la responsabilidad correspondiente a los abuelos.

Puesto en su adecuada perspectiva, este caso plantea a nivel macro la realidad social indeseable de padres que abandonan a sus hijos, como si traerlos al mundo no conllevara

responsabilidades individuales y sociales de gran importancia. Por otra parte, representa la realidad de madres que con sacrificio, voluntad y perseverancia hacen todo lo posible en un ambiente de adversidad, para que sus hijos se críen adecuadamente. La ley y la justicia le imponen obligaciones a los abuelos bajo determinadas circunstancias.

A continuación exponemos el trasfondo procesal del caso.

I

El 20 de enero de 1972 la peticionaria se divorció del Sr. Sergio Gordillo Gil por la causal de abandono. La sentencia fue dictada en rebeldía e impuso al demandado la obligación de satisfacer una pensión alimentaria de doscientos (200) dólares mensuales para beneficio de sus dos (2) hijos menores de edad. *Desde dos (2) años antes de dictarse la sentencia hasta el presente se ha desconocido el paradero del señor Gordillo Gil.*

El 25 de febrero de 1980 la peticionaria, madre de los menores, presentó en el Tribunal Superior de San Juan una demanda en cobro de dinero para reclamar a su ex esposo la suma de $19,200 por concepto de pensiones alimentarias atrasadas. El 30 de abril de 1980 ésta enmendó la demanda para incluir como demandados a los abuelos paternos de los menores, a saber, los padres del señor Gordillo Gil. En esta demanda enmendada la madre alegaba que los abuelos paternos venían obligados a proveer una pensión alimentaria para sus dos (2) hijos, según lo establece el Art. 143 del Código Civil, 31 L.P.R.A. sec. 562. Tras diversos trámites procesales, el foro de instancia dictó sentencia el 10 de febrero de 1981, en que declaró con lugar la demanda contra el señor Gordillo Gil y desestimó en cuanto a los abuelos paternos.

El tribunal determinó que la reclamación contra los abuelos paternos no procedía, ya que su obligación era subsidiaria y sólo era exigible cuando los padres, quienes son los obligados en primer orden, no están física o mentalmente

capacitados para proveer alimentos a sus hijos. *Dicha sentencia advino final y firme.*[1]

Así las cosas, cuatro (4) años más tarde, el 8 de febrero de 1985, la madre, por conducto de su nueva representación legal, presentó ante el Tribunal Superior un escrito titulado: *Moción de Desacato, Asumiendo Representación Legal y en Solicitud de Sustitución de Obligación Alimenticia.* En el epígrafe de esta moción se incluyó únicamente a ella como demandante y al Sr. Sergio Gordillo Gil como demandado. En dicho escrito la madre alegó que el demandado Sergio Gordillo Gil le adeudaba la suma de $30,800 por pensiones alimentarias atrasadas y que, conforme a lo resuelto en *Vega v. Vega Oliver*, 85 D.P.R. 675 (1962), los abuelos paternos venían obligados a proveer alimentos a sus nietos, por lo cual era atribuible a ellos la obligación alimentaria del padre ausente.

Los abuelos paternos plantearon como defensas: (1) que la abuela materna era parte indispensable en el pleito; (2) que la reclamación contra ellos era cosa juzgada conforme a la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 1981, y (3) que el procedimiento mediante el cual ellos habían sido traídos al pleito no era el adecuado y les violaba su derecho a un debido proceso de ley, ya que ellos no eran parte en el procedimiento de desacato y no existía una demanda a la cual oponerse dentro del término reglamentario. La madre replicó y se opuso a cada una de las defensas presentadas por los abuelos paternos. En cuanto a la controversia sobre si la abuela materna era parte indispensable, la madre sostuvo que no lo era, ya que ella ayudaba económicamente a los menores con los beneficios que recibía del seguro social y al proveerles albergue en su residencia.

---

[1] No podemos reabrir dicho caso ni en el foro de instancia ni ante nos.

El tribunal de instancia, luego de celebrar una vista, mediante resolución declaró con lugar la solicitud de los abuelos paternos y desestimó así la reclamación de la madre.

La madre recurre ante nos para cuestionar dicho dictamen. En particular señala que el tribunal de instancia erró al determinar que la abuela materna era parte indispensable y al desestimar la reclamación por razones procesales. El 29 de julio de 1986 expedimos auto de *certiorari*. Estamos en posición de resolver.

## II

Para ubicar en adecuada perspectiva las controversias que tenemos ante nos, examinemos la obligación de los abuelos de alimentar a sus nietos y la naturaleza de ésta.

La obligación legal de los abuelos de alimentar a sus nietos surge de los Arts. 143 y 144 del Código Civil, 31 L.P.R.A. secs. 562 y 563.[2] Dicha obligación es de naturaleza

---

[2] El Art. 143, según enmendado, dispone:

"Están obligados recíprocamente a darse alimentos, en toda la extensión que señala la sec. 561 de este título:

"1. Los cónyuges.

"2. Los ascendientes y descendientes.

"3. El adoptante y el adoptado y sus descendientes.

"Los hermanos se deben recíprocamente aunque sólo sean uterinos, consanguíneos o adoptivos los auxilios necesarios para la vida, cuando por un defecto físico o moral, o por cualquier otra causa que no sea imputable al alimentista, no puede éste procurarse su subsistencia. En estos auxilios están, en su caso, comprendidos los gastos indispensables para costear la instrucción elemental y la enseñanza de una profesión, arte u oficio." 31 L.P.R.A. sec. 562.

El Art. 144 establece:

"La reclamación de alimentos, cuando proceda y sean dos o más los obligados a prestarlos, se hará por el orden siguiente:

"1. Al cónyuge.

"2. A los descendientes del grado más próximo.

"3. A los ascendientes también del grado más próximo.

"4. A los hermanos.

"Entre los descendientes y los ascendientes se regulará la gradación por el orden en que sean llamados a la sucesión legítima de la persona que tenga derecho a los alimentos." 31 L.P.R.A. sec. 563.

subsidiaria. Es decir, surge cuando los padres no ·pueden proveerles a sus hijos los alimentos, ya sea porque están física o mentalmente incapacitados para hacerlo o porque no cuentan con suficientes recursos económicos para cumplir con su obligación. *Vega v. Vega Oliver*, supra; J.M. Manresa, *Comentarios al Código Civil Español*, 7ma ed., Madrid, Ed. Reus, 1956, T. I, pág. 809. Conforme con las disposiciones citadas, tanto los abuelos paternos como los maternos vienen obligados a asumir la obligación alimentaria cuando los padres no pueden hacerlo por las razones expuestas.

Por ello debemos determinar la naturaleza de dicha obligación. Veamos.

■ El Art. 145 del Código Civil, 31 L.P.R.A. sec. 564, dispone la norma general de que cuando recaiga sobre dos (2) o más personas la obligación de dar alimentos, el pago de la pensión se repartirá entre cada uno de ellos en proporción a sus respectivos caudales. Por vía de excepción, en situaciones de urgente necesidad o por circunstancias especiales, el tribunal podrá provisionalmente imponer a uno solo de los obligados el pago total de la deuda, siempre y cuando cuente con suficientes medios para satisfacerla, y ello sin menoscabo de su derecho a reclamar de los demás la proporción de la deuda que les corresponda.[3]

---

[3] Art. 145:

"Cuando recaiga sobre dos o más personas la obligación de dar alimentos, se repartirá entre ellos el pago de la pensión en cantidad proporcionada a su caudal respectivo.

"Sin embargo, en caso de urgente necesidad y por circunstancias especiales, podrá el juez obligar a uno solo de ellos a que los preste provisionalmente, sin perjuicio de su derecho a reclamar de los demás obligados la parte que les corresponda.

"Cuando dos o más alimentistas reclamaren a la vez alimentos de una misma persona obligada legalmente a darlos, y ésta no tuviere fortuna bastante para atender a todos, se guardará el orden establecido en la sección anterior, a no ser que los alimentistas concurrentes fuesen el cónyuge y un hijo sujeto a la patria potestad, en cuyo caso aquél será preferido a éste si fuese padre o madre del hijo

254

La mayoría de los tratadistas concuerdan que cuando recaiga sobre dos (2) o más personas la obligación alimentaria, ésta es de naturaleza mancomunada, ya que cada persona sólo será responsable por una porción de la deuda, la cual será fijada en proporción a los caudales de los obligados. F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Eds. Pirámide, 1976, T. V, pág. 498; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1985, T. IV, pág. 287; J.L. Lacruz Berdejo y F.A. Sancho Rebullida, *Derecho de Familia*, 3ra ed., Barcelona, Ed. Bosch, 1978, Vol. II, pág. 215; M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, 2da ed., Madrid, Ed. Rev. Der. Privado, 1982, T. III, Vol. 2, pág. 42; Manresa, *op. cit.*, pág. 827.

■ Otros tratadistas esbozan un enfoque distinto. Díez-Picazo sostiene que no se trata de una obligación mancomunada propiamente, sino de dos (2) o más obligaciones independientes entre sí y determinadas por la capacidad económica del obligado. A esos efectos expresa:

> Si aplicando los criterios anteriores hay dos o más personas obligadas a dar alimentos (p. ej., dos hermanos, dos abuelos, etc.), se reparte entre ellas el pago de la pensión en proporción a su caudal respectivo (Art. 145). No hay una sola obligación mancomunada con dos deudores, sino dos obligaciones diversas de manera que cada una de ellas podrá sufrir sus propias vicisitudes. L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1983, Vol. IV, pág. 55.

El enfoque de Díez-Picazo refleja de una manera más precisa la naturaleza sui géneris de la obligación alimentaria. Él considera que no se trata realmente de una sola deuda con

solicitante, y si no le fuese, se distribuirá por igual entre ambos." 31 L.P.R.A. sec. 564.

dos (2) o más obligados, sino de dos (2) o más deudas distintas sujetas a los cambios que pudieren sufrir las capacidades económicas de los obligados.

■■■ Cuando se dan las circunstancias señaladas en la excepción del Art. 145, *supra*, a los efectos de que existe una situación de urgente necesidad o circunstancias especiales, el tribunal puede ordenar que sólo uno (1) de los obligados la preste. La doctrina ha reconocido que en estas situaciones la obligación alimentaria se torna en solidaria. Puig Peña, *op. cit.*, pág. 498; Lacruz Berdejo y Sancho Rebullida, *op. cit.*, pág. 223. En dichas circunstancias la reclamación puede dirigirse contra cualquiera de los obligados por la totalidad de la deuda. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 8va ed., Madrid, Ed. Reus, 1966, T. V, Vol. 2, pág. 264. Corresponde al tribunal determinar en cada caso lo que constituye una situación de urgente necesidad o circunstancias especiales.(4)

## IV

Examinemos el primer error señalado de que la madre materna no tenía que ser parte en el pleito. Concluimos que dicho error se cometió.

■■■ El hecho de que el Art. 145, *supra*, requiera que se distribuya el pago de la deuda alimentaria cuando hay dos (2) o más obligados no significa que la abuela materna es parte indispensable en una reclamación de alimentos contra los abuelos paternos y, mucho menos, que debe desestimarse el

---

(4) Los menores tienen diversos recursos para poder cobrar las pensiones alimentarias adeudadas por su padre. Además de los otros mecanismos para asegurar sentencias disponibles en las Reglas de Procedimiento Civil, los menores tienen un crédito contra cualquier herencia que pueda recibir su padre. Art. 1035 del Código Civil, 31 L.P.R.A. sec. 2931.

pleito por no ser ella parte.(5) Este artículo no dispone una norma de carácter procesal, pues no establece cómo habrán de llevarse a cabo los procedimientos ante el tribunal.

█ Cuando concurren varios obligados concurren, a su vez, obligaciones distintas y distinguibles entre sí. Por ello, es perfectamente compatible con la naturaleza de la obligación una reclamación dirigida contra uno de varios obligados para reclamarle aquella porción de la deuda que le corresponde al deudor. No es necesario que las otras partes obligadas sean parte indispensable de dicha reclamación. En *Vega v. Vega Oliver*, supra, los abuelos maternos no fueron parte en el pleito. Allí impusimos la obligación alimentaria al padre y al abuelo de conformidad con sus respectivas capacidades económicas.

█ Si los abuelos demandados entienden que se les está reclamando una suma en exceso a lo que debe ser su obligación, deberán entonces reclamar a los demás obligados mediante demanda contra tercero o, si ya ha recaído sentencia, recurriendo en alzada o mediante los remedios postsentencia que proveen las Reglas de Procedimiento Civil.

█ De conformidad con el primer párrafo del Art. 145, *supra*, una vez el tribunal determine que hay varios obligados y que pueden contribuir a la obligación de proveer alimentos, el pago de la deuda deberá repartirse necesariamente entre los obligados. Para ello el demandado deberá colocar al tribunal en condiciones de poder adjudicar la responsabilidad de los demás presuntos obligados, incluyéndolos en el pleito mediante los mecanismos procesales

---

(5) El Tribunal Supremo de España ha llegado a una conclusión semejante al declarar que no es necesaria la comparecencia de la abuela materna en una reclamación de alimentos presentada contra los abuelos paternos. S. de 2 de diciembre de 1983, Núm. 6816, L (Vol. III) Repertorio de Jurisprudencia 5224.

apropiados.(6) El demandado podrá, además, levantar el asunto como una defensa afirmativa.

 En estas situaciones, en que se pretende traer a los otros abuelos al pleito de alimentos, los tribunales deben tener presente siempre la norma de que los procedimientos de alimentos deben tramitarse con la debida rapidez. *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616 (1986); *Quiñones v. Jiménez Conde*, 117 D.P.R. 1 (1986); *Martínez v. Rivera Hernández*, 116 D.P.R. 164 (1985).

## V

Veamos el segundo error señalado a los efectos de que la reclamación contra los abuelos paternos no es cosa juzgada. Resolvemos que no lo es.

Conforme al Art. 1204 del Código Civil, 31 L.P.R.A. sec. 3343, "[p]ara que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquel en que ésta sea invocada concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron".

 La presunción de cosa juzgada no aplica inflexiblemente, cuando de hacerlo se derrotaría un principio de política pública o los fines de la justicia. *Millán v. Caribe Motors Corp.*, 83 D.P.R. 494 (1961); *Pérez v. Bauzá*, 83 D.P.R. 220 (1961); *G.A.C. Fin. Corp. v. Rodríguez*, 102 D.P.R. 213 (1974); *P.I.P. v. C.E.E.*, 120 D.P.R. 580 (1988).

 Los casos "relacionados con alimentos de menores están revestidos del más alto interés público". *Negrón*

---

(6) Un demandado podrá traer como parte a otras personas obligadas en su mismo orden o en uno anterior. Por ejemplo, en una reclamación contra los abuelos, éstos podrán traer al pleito a los otros abuelos o a los padres de los menores.

*Rivera y Bonilla, Ex parte,* 120 D.P.R. 61, 71 (1987). Este interés consiste en lograr la consecución del bienestar del menor. El Estado tiene un interés legítimo de que los menores cuenten con los alimentos necesarios para lograr su pleno desarrollo físico y social. Las sentencias de alimentos no constituyen cosa juzgada y siempre estarán sujetas a revisión cuando hay cambios sustanciales en las necesidades del alimentista y en los recursos económicos del alimentante. *García v. Acevedo,* 78 D.P.R. 611 (1955); *Fenning v. Tribunal Superior,* 96 D.P.R. 615 (1968); *Castrillo v. Palmer,* 102 D.P.R. 460 (1974).[7]

Al igual que en la revisión de las pensiones fijadas, la protección de dicho interés público excluye la aplicación de la doctrina de cosa juzgada a una reclamación de alimentos presentada por los nietos contra sus abuelos. Al ser la obligación alimentaria de éstos subsidiaria a la de los padres, la doctrina de cosa juzgada no impide el que una parte vuelva a cuestionar la responsabilidad de los abuelos, siempre y cuando sea parte esencial de la controversia la capacidad de los padres para cumplir con la obligación y la necesidad de los menores.

En el caso de autos la recurrente alegó oportunamente cambios sustanciales justificativos de que tanto ella como el padre ausente no cuentan con los recursos económicos necesarios para satisfacer las recientes necesidades de sus dos (2) hijos menores. Esta alegación era de por sí suficiente para permitirle a la madre relitigar el asunto referente a la responsabilidad alimentaria de los abuelos paternos.

---

(7) Claro está, recientemente hemos sostenido que la protección del interés alimentario del menor impide que la pensión fijada sea reducida en ausencia de un cambio sustancial en las circunstancias que existieron al momento de fijarse la pensión. *Negrón Rivera y Bonilla, Ex parte,* 120 D.P.R. 61 (1987); *López v. Rodríguez,* 121 D.P.R. 23 (1988).

Cabe destacar que la sentencia de 10 de febrero de 1981 que advino final y firme no impuso responsabilidad alimentaria a los abuelos, por lo que el planteamiento de cosa juzgada en cuanto a ello es meritorio. Aplicar la doctrina de cosa juzgada al caso de autos derrotaría la política involucrada en casos de alimentos de menores, obstaculizaría innecesariamente el acceso de los menores a los tribunales y tendría el efecto de prejuzgar adversamente las necesidades de dichos menores.

## VI

Por último, atendemos el planteamiento de que los abuelos paternos no eran parte en el procedimiento de desacato y que, por consiguiente, se les violaba el debido proceso de ley al tratar de imponerles una obligación alimentaria mediante dicho procedimiento. El foro de instancia no incidió al acoger dicho planteamiento.

Los tribunales de justicia, en su función de *parens patriae*, "tienen un profundo interés público y social de que sus sentencias de alimentos a menores de edad sean cumplidas", *Sosa Rodríguez v. Rivas Sariego*, 105 D.P.R. 518, 521 (1976), y cuentan con el recurso de desacato para hacer valer sus sentencias de alimentos. El desacato civil no es una medida punitiva, sino correctora, que persigue la finalidad de lograr el cumplimiento de la orden de alimentos mediante la amenaza de encarcelación. *Espinosa v. Ramírez, Alcaide de Cárcel*, 72 D.P.R. 901 (1951); *Pérez v. Espinosa*, 75 D.P.R. 777 (1954); *Pueblo v. Vega, Jiménez*, 121 D.P.R. 282 (1988). En esencia, el desacato está disponible para asegurar el cobro de pensiones alimentarias atrasadas, con las salvaguardas que hemos señalado en *Rodríguez Avilés v. Rodríguez Beruff*, supra; *Valencia, Ex parte*, 116 D.P.R. 909 (1986), y *Otero Fernández v. Alguacil*, 116 D.P.R. 733 (1985).

 El desacato en casos de alimentos es un trámite *incidental* a otro proceso judicial que permite hacer efectiva una orden previa del tribunal. El procedimiento de desacato va dirigido únicamente contra aquella parte que ha incumplido una orden del tribunal. En los casos de alimentos, va dirigido exclusivamente contra la parte sobre la cual se ha determinado que pesa la obligación de satisfacer una pensión alimentaria.

 No se puede hacer uso del procedimiento de desacato para exigir el pago de una pensión a una persona cuya responsabilidad alimentaria *no ha sido adjudicada previamente.* La adjudicación de la responsabilidad alimentaria de una persona debe ventilarse primero, imponer la responsabilidad que corresponda y luego, cuando ésta se incumpla, determinar si procede o no imponer desacato.

 En el caso ante nos, la responsabilidad sobre la obligación alimentaria se había determinado *en cuanto al padre, mas no* en cuanto a los abuelos paternos.[8]

La naturaleza misma del procedimiento de desacato no permite el que se traigan dentro de dicho procedimiento de desacato en forma *colateral* a los abuelos paternos para, *por primera vez,* establecer su responsabilidad alimentaria subsidiaria. *Ello debe hacerse en un pleito independiente.* Regla 2 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Resumiendo, la abuela materna no es una parte indispensable en este pleito, la reclamación contra los abuelos paternos no constituye cosa juzgada y no procede, dentro de un procedimiento de desacato contra un padre, traer a los abuelos paternos para por primera vez imponerles responsabilidad alimentaria subsidiaria.

------

[8] En la sentencia de 10 de febrero de 1981, que advino final y firme, no se impuso responsabilidad alimentaria a los abuelos. En cuanto a ellos, la reclamación fue desestimada.

*Se confirmará la sentencia del foro de instancia sin perjuicio de que se inicie el pleito independiente correspondiente.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita.